UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

RALPH SNODGRASS,  )
                  )
        Plaintiff, )
                  )
    vs.           )   No. 1:12-cv-1817-TAB-LJM
                  )
BLAINE HURT, J.C. JACKSON, )
DAVID WARNER, ALEXANDER SHAW, )
MICHAEL KING, and ERIC WESTSON, )
                  )
        Defendants. )

**ORDER FOLLOWING *PAVEY V. CONLEY* EXHAUSTION HEARING**

**I. Introduction**

Plaintiff Ralph Snodgrass filed this civil rights action against Pendleton Correctional Officers Blaine Hurt, J.C. Jackson, David Warner, Alexander Shaw, Michael King, and Eric Weston asserting that the officers used excessive and unreasonable force against him on July 30, 2010, causing head injuries. The Court, having denied Defendants' motion for summary judgment for failure to exhaust available administrative remedies, scheduled an exhaustion hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). [Filing No. 46.] Because failure to exhaust is an affirmative defense, Defendants had the burden of proof. At the hearing, Plaintiff appeared via video conference with counsel. Defendants appeared by counsel, along with Defendants' witness, Executive Assistant Wayne Scaife. Having reviewed the testimony, evidence presented at the hearing, and the parties' legal arguments, the Court finds that Defendants met their burden. For the reasons set forth below, Plaintiff's case is dismissed without prejudice.

**II. Discussion**

    *A.    Exhaustion standards*

Under the Prison Litigation Reform Act, a prisoner must properly exhaust his administrative remedies through compliance with an agency's deadlines before filing in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). To determine whether a prisoner has exhausted the available remedies, the Court conducts a hearing on exhaustion. If the Court determines that the prisoner did not exhaust the available administrative remedies, the Court can (1) order the prisoner to go back and exhaust; (2) find that the prisoner's failure to exhaust was innocent because prison officials prevented the prisoner from exhausting his remedies, and the prisoner must be given another chance to exhaust (assuming that a remedy exists that the prison officials will permit the prisoner to exhaust); or (3) find that the prisoner was at fault for failing to exhaust, in which case, the prisoner's case is over. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008).

A remedy is unavailable if a prisoner is not made aware of the grievance process, officials fail to properly respond to a grievance, or prison officials use affirmative misconduct to prevent a prisoner from exhausting. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). If a remedy is made unavailable, then the defendants fail to meet their burden of proof. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002).

*B.    Snodgrass' use of the grievance process*[1]

The offender grievance process at Pendleton Correctional Facility includes three steps: (1) an informal attempt to solve a problem or address a concern, followed by (2) submission of a

---

[1] The Court set forth the details of Snodgrass' grievance in its order denying Defendants' motion for summary judgment. [*See* Filing No. 46.]

written form setting out the problem or concern and other information, and response to that submission, followed by (3) a written appeal of the response to a higher authority and response to that appeal. [Filing No. 35-3, at ECF p. 5.] The executive assistant reviews the grievance forms and approves forms that conform to the grievance requirements. Approved forms become part of an offender's official grievance history. Grievance forms must relate to only one event, explain the situation, show how the offender tried to resolve the issue informally, and suggest a remedy. The grievance form must also be completed with legible writing, simple English, and include the date and the offender's signature. [Filing No. 35-3, at ECF p. 17.] An offender must submit a grievance form within twenty days of the incident that caused the grievance.

A grievance form will be rejected if an offender seeks a remedy available through the classification process. Facility transfers are considered classification actions and are not part of the grievance process. [Filing No. 35-3, at ECF p. 6.] However, the executive assistant has the discretion to consider a grievance form that does not conform to the rules if there is good cause for the violation.[2] [Filing No. 35-3, at ECF p. 19.] If the executive assistant finds that the grievance form does not conform to the grievance process requirements and there is no good cause shown, the executive assistant will send a return of grievance form to the offender. When the executive assistant sends a return of grievance form to the offender, the grievance does not appear on the offender's official grievance history. Upon receipt of the return of grievance form, the offender has five working days to submit a revised grievance form for review. [Filing No.

---

[2] Snodgrass argues that Executive Assistant Scaife abused his discretion in rejecting Snodgrass' original grievance form, which clearly concerned a grievable issue, and therefore, made administrative remedies unavailable to Snodgrass. [Filing No. 57, at p. 6-7.] This is not the case. The grievance policy explicitly states that a grievance form must include a remedy and can be rejected if it concerns a classification issue, like a transfer to another prison. It is not an abuse of discretion to follow the grievance process, and Snodgrass had an opportunity to revise his grievance form.

3

35-3, at ECF p. 19.] The return of grievance form explicitly indicates this deadline under the executive assistant's signature line.

Executive Assistant Scaife rejected Snodgrass' grievance form because Snodgrass requested a transfer to another prison, which is a classification issue.[3] At the hearing, Scaife testified that Snodgrass was to submit a revised grievance form within five days of receiving the returned grievance form. There is no record of Snodgrass submitting another grievance form. Moreover, Indiana State Police Litigation Liaison Pam James declared in an affidavit admitted at the hearing that there was no record of Snodgrass submitting a classification request. Nevertheless, Snodgrass testified that he attempted to resubmit another grievance form and gave this revised form to a correctional officer. He also asserted that he spoke with his case manager and cell block counselors about his grievance, and wrote to Assistant Superintendent Dwayne Alsip but received no response.

Snodgrass testified that he understood the grievance process before he submitted his grievance form on the July 30 incident. His official grievance history showed that he had successfully used the grievance process in the past in an unrelated matter. [Filing No. 32-1.] At the hearing, Snodgrass also indicated that he understood how to use the classification process as a correctional officer had explained the process to him.

After reviewing the related evidence and having weighed the conflicting evidence, the Court finds that Snodgrass did not exhaust all available remedies. For one, there is no record of a grievance concerning the July 30 incident in Snodgrass' official grievance history. Scaife had no knowledge of any further attempts by Snodgrass to submit another grievance form. Litigation

---

[3] Snodgrass submitted his grievance form after the twenty-day deadline and failed to indicate the date at which he attempted to informally resolve his grievance. Scaife did not reject Snodgrass' grievance form due to these flaws so they are not relevant for purposes of exhaustion.

Liaison James' affidavit stated that there was no evidence of any attempts to submit a classification request relating to this incident. Moreover, Snodgrass provided no evidence to contradict Scaife's and James' testimony, such as copies of any additional grievance forms he attempted to resubmit. Likewise, Snodgrass produced no documentation to support his testimony on his informal efforts to resolve his grievance. Snodgrass testified that he spoke with his case manager, cell block counselors, and Assistant Superintendent Alsip. He even went so far as to state that he has copies of all the communications he had with Pendleton officers concerning his grievance. However, he provided no such documentation to his counsel, opposing counsel, or the Court to corroborate his testimony. Thus, the Court credits Scaife's and James' testimony as it is consistent with the evidence before the Court.

More important, Snodgrass' testimony was uneven. Snodgrass testified that he tried to submit a revised grievance form while he was "on the range," a high security cell block. On direct examination, he admitted that he did not know the name of the correctional officer to whom he gave his revised grievance form. But on cross examination, he stated that Correctional Officer Michael King, a named Defendant, took his grievance form. Similarly, Snodgrass testified that he did not know how the grievance process worked before he submitted his grievance form on the July 30 incident. Later, however, he said he understood the process and had successfully used the grievance system on a previous matter.

Snodgrass' testimony and affidavit also varied as to the steps he took to address his grievance. At the hearing, Snodgrass indicated that he had spoken with his case manager, cell block counselors, and Alsip. Snodgrass' affidavit, however, included even more steps. In his affidavit, Snodgrass asserted that he wrote to Alsip twice and submitted two revised grievance forms. Snodgrass claimed he gave one form to an unnamed correctional officer and the other to

5

Officer Jessica Hammick, who had told Snodgrass to contact Captain Gilly. [Filing No. 44-3, at ECF p. 3.] Snodgrass' affidavit also claimed that he contacted Captain Gilly. Yet at the hearing, Snodgrass never mentioned his communication with Officer Hammick, his third grievance form, or his communication with Captain Gilly.

Thus, the Court concludes that Snodgrass failed to follow the grievance process. Defendants' records reveal no grievance form relating to the July 30 incident in Snodgrass' official grievance history, despite the fact that Snodgrass understood how to file claims under both the grievance and classification processes. Moreover, there is no evidence to suggest that officers used affirmative misconduct to prevent Snodgrass from filing a grievance. While Snodgrass asserts that he spoke with several Pendleton officers concerning his grievance, he provided no documentation to corroborate his testimony, and his statements concerning his efforts were uneven. The Court discredits Snodgrass' testimony as the inconsistencies in his testimony and affidavit are unresolved. Accordingly, Snodgrass failed to exhaust.

### III. Conclusion

The Court finds that Defendants met their burden of proof for their failure to exhaust affirmative defense. Thus, Snodgrass' case is dismissed without prejudice. Snodgrass must exhaust his administrative remedies before he may pursue an action in federal court.

Date: 08/08/2014

Distribution:

Christopher Carson Myers
CHRISTOPHER C. MYERS & ASSOCIATES
cmyers@myers-law.com

Rachel Janel Guin-Lowry
CHRISTOPHER C. MYERS & ASSOCIATES
rguin@myers-law.com

Ilene M. Smith
CHRISTOPHER MYERS & ASSOCIATES
ismith@myers-law.com

Dino L. Pollock
INDIANA ATTORNEY GENERAL
dino.pollock@atg.in.gov